UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN GARRETT,

               Petitioner,                              Case No. 1:12-cv-816
                                                                Hon. Robert J. Jonker

v.

CINDI CURTIN,

               Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner Jonathan Garrett, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.      Background**

On May 27, 2009, following a bench trial, petitioner was convicted of two counts of armed robbery, M.C.L. § 750.529; first-degree home invasion, M.C.L. § 750.110a(2); and possession of a firearm during the commission of a felony, M.C.L. § 750.227b. *People v. Garrett*, No. 293248, 2011 WL 15335 at *1 (Mich. App. Jan. 4, 2011). The court sentenced petitioner to a term of 10 to 17 years for each count of armed robbery, 7 to 20 years for the home invasion, with these sentences to be served concurrently with each other and consecutive to a two-year sentence for felony firearm. *Id.*

The Michigan Court of Appeals (sometimes referred to as the "state appellate court") summarized the underlying facts of petitioner's convictions as follows:

Defendant's convictions arise from his participation in a robbery at a residential house where three individuals were working on October 7, 2008. One of the complainants, Steve Hess, knew defendant from a juvenile detention center that

they both attended and identified him before trial as one of the robbers. However, the police were not successful in locating Hess to testify at trial. The two other complainants, Billy Cash and Meho Basic, testified at trial and identified defendant as one of the two robbers. The defense theory at trial was misidentification. Defendant argued at trial that the complainants' identification was not credible and inconsistent.

*Id.*

After his convictions, petitioner moved for a new trial and the court held an evidentiary hearing. *See* Motion Trans. (March 12, 2010) (docket no. 27). Witnesses included petitioner, his trial counsel, his mother, and his cousin. *Id.* The trial court denied the motion for a new trial in a rather extensive 19-page order. Order (April 6, 2010) (docket no. 30).

Petitioner, through counsel, raised five issues in his direct appeal to the Michigan Court of Appeals:

I.     Whether the court improperly refused to rule inadmissible an identification acquired through a suggestive identification procedure?

II.     Whether defendant's conviction was unconstitutional and unlawful because of an invalid waiver of jury trial?

III.     Whether there was sufficient evidence of home invasion because the building entered was not proven to be a dwelling, and the findings of fact and conclusions of law were insufficient?

IV.     Whether defendant was prejudiced by ineffective assistance of counsel?

V.     Whether defendant should be re-sentenced because the court considered and scored him for psychological injury where no evidence of this was presented?

Appellant's Brief at p. vi (docket no. 28). The Michigan Court of Appeals affirmed the conviction and sentences on January 4, 2011. *Garrett*, No. 2011 WL 15335. Petitioner filed an application for leave to appeal the same five issues, which the Michigan Supreme Court denied on May 24, 2011.

2

*See* Application (docket no. 1-1, PageID.22-32, 40 and docket no. 29); *People v. Garrett*, 489 Mich. 936 (May 24, 2011).  Petitioner raised the same five issues in this habeas petition, which is now pending before the Court.  Petition at PageID.7-14 (Issues I, II, III and IV); Memorandum (docket no. 1-1, PageID.18) (appendix containing Issue V).

## II.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. § 2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981);  *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  In the present case, petitioner has exhausted his state remedies with respect to his habeas claims.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

   "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011). *See McFarland v. Scott*, 512 U.S. 849, 859 (1994) ("A criminal trial is the main event at which a defendant's rights are to be determined, and the Great Writ is an extraordinary remedy that should not be employed to relitigate state trials."). The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 773 (2010) (internal quotation marks and citations omitted). This deferential standard "requires Petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103. Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted).

   Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct

4

governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id*. A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

Finally, a determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### III.    Discussion

### A.    In-court identification of petitioner (Issue I)

In his first ground for habeas relief, petitioner contends that the trial court erred in permitting complainant Cash's in-court identification of him as one of the robbers. The trial court addressed this claim in denying the motion for a new trial as follows:

> The court conducted a hearing prior to the trial on the issue of identification of the defendant as one of the robbers. The United States Supreme Court held in *Untied States v Wade*, 388 U.S. 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967) that if pretrial identification procedures were unnecessarily suggestive or conducive to irreparable misidentification the trial court must hold an evidentiary hearing at which the people must show by clear and convincing evidence that the in-court identification had a basis independent of the prior identification procedure prior to an in-court identification at trial. After taking testimony on the issue of identification the court found that this was a simple case of an eyewitness who identified the defendant at the preliminary examination. There was no lineup or photo show up

5

conducted or any prior misidentification by the witnesses. There was nothing improper about the identification procedure.

The defendant cites several US Supreme Court and Michigan cases that condemn suggestive identification procedures involving lineups, single photo show ups and other improper identification procedures. He argues that allowing the witness to identify the defendant in court is the same as a one-person lineup. The cases relied on by the defendant all involve a challenge to various pretrial identification procedures which did not even occur in this case. There is no case law that prohibits an eyewitness from appearing in court at a preliminary examination or trial and that they believe that the accused was the person who committed the charged offense. Identification of the offender by eyewitnesses under sworn testimony and subject to cross examination is one of the fundamental purposes of a preliminary examination and a trial. To say that a preliminary examination or trial procedure where the witness identifies the defendant as the offender is somehow improper turns the law on its ear. The defendant's claim that he was prejudiced by a suggestive identification procedure is meritless.

Order (April 6, 2010), slip op. at p. 10.

The Michigan Court of Appeals found petitioner's claim to be without merit:

Defendant first argues that the trial court erred in permitting Cash's in-court identification of him as one of the robbers. "The trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v. Harris,* 261 Mich. App 44, 51; 680 NW2d 17 (2004). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.*

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v. Williams,* 244 Mich. App 533, 542; 624 NW2d 575 (2001). If an identification procedure is impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for the in-court identification can be established. *Id.* at 542-543. The fairness or suggestiveness of an identification procedure is evaluated in light of the totality of the circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification. *People v. Kurylczyk,* 443 Mich. 289, 302; 505 NW2d 528 (1993); *People v. Hornsby,* 251 Mich. App 462, 466; 650 NW2d 700 (2002). "The need to establish an independent basis for an in-court identification arises [only] where the pretrial identification is tainted by improper procedure or is unduly suggestive." *People v. Barclay,* 208 Mich. App 670, 675; 528 NW2d 842 (1995).

Here, defendant does not argue that a pretrial identification procedure was improper or unduly suggestive. Rather, defendant's argument is premised on the fact that no pretrial lineup was ever conducted, and that Cash first identified him in a courtroom setting. A defendant has no constitutional or statutory right to a pretrial identification. *People v. Farley,* 75 Mich. App 236, 238; 254 NW2d 853 (1977). Because there was no pretrial identification procedure that was unduly suggestive, it is not necessary to determine whether there is an independent basis for Cash's in-court identification. Nonetheless, the record establishes that there was an independent basis for Cash's in-court identification. The following factors are considered in determining whether an independent basis exists for the admission of an in-court identification:

> (1) [P]rior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any pre-lineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant. [*People v. Thomas Davis,* 241 Mich. App 697, 702-703; 617 NW2d 381 (2000).]

It is not necessary that all factors be given equal weight. *People v. Kachar,* 400 Mich. 78, 97; 252 NW2d 807 (1977).

In this case, Cash testified that he had an opportunity to view defendant a few hours before the robbery, and again during the robbery. The first visit occurred during a normal setting, when defendant came to the house to inquire about its availability and engaged in a business conversation with Cash. It was daylight and defendant stood approximately four feet from Cash. When defendant returned to the house the second time, Cash engaged in further conversation with him before he committed the robbery, telling him not to stand on the new tile. Cash testified that he observed the tattoo markings on defendant's neck and left hand, which were special identifying characteristics that were noticeable. Moreover, Cash testified that he was certain of his identification of defendant, and he never identified anyone other than defendant. Considering Cash's prior encounter with defendant and the nature and circumstances of that encounter, that Cash again had ample opportunity to observe defendant immediately before and during the offense, Cash's ability to identify distinguishing marks on defendant, the level of certainty in Cash's identification of defendant, and that there was no evidence that Cash had ever identified anyone else, the record

7

clearly establishes that there was an independent basis for Cash's in-court identification. Accordingly, the trial court did not err in allowing Cash's in-court identification at trial.

*Garrett*, 2011 WL 15335 at *1-2.

To the extent petitioner contends that he had a constitutional right to a pre-trial lineup, his contention is without merit. "An accused has no absolute or constitutional right to a lineup." *United States v. Robertson*, 606 F.2d 853, 857 (9th Cir. 1979). *See Branch v. Estelle*, 631 F.2d 1229, 1234 (5th Cir. 1980) ("the law is settled that a defendant has no Constitutional right to a line-up"); *Paris v. Rivard*, 105 F. Supp. 3d 701, 726 (E.D. Mich. 2015) ("[a]n accused has no constitutional right to a pretrial lineup"). *See also*, *United States v. Hill*, 967 F.2d 226, 233 (6th Cir. 1992) (the government was not required to conduct a lineup prior to a witness' in-court identification).

To the extent petitioner contends that his in-court identification violated a constitutional right, his contention fails. "[D]ue process protects the accused against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." *Moore v. Illinois*, 434 U.S. 220, 227 (1977). The Supreme Court has established a two-step analysis for determining the admissibility of identification evidence. "First, a defendant bears the burden of proving the identification procedure was impermissibly suggestive. Second, if the defendant proves that the identification procedures were impermissibly suggestive, the trial court must determine whether, under the totality of the circumstances, the testimony was nevertheless reliable." *Hill*, 967 F.2d at 230. In *Neil v. Biggers*, 409 U.S. 188 (1972), the Supreme Court set forth five factors that must be considered when evaluating the reliability of an identification procedure performed at a police station:

(1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the crime and the confrontation.

*Hill*, 967 F.2d at 230, citing *Biggers*, 409 U.S. at 199-200. "All of the concerns that underlie the *Biggers* analysis, including the degree of suggestiveness, the chance of mistake, and the threat to due process are no less applicable when the identification takes place for the first time at trial." *Hill*, 967 F.2d at 232. Here, the state appellate court addressed the relevant considerations under *Biggers* and determined that the identification was sufficiently reliable. *See Garrett*, 2011 WL 15335 at *1-2.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

## B. Invalid waiver of jury trial (Issue II)

Next, petitioner contends that his jury waiver was invalid because it was not knowingly or voluntarily made. The Michigan Court of Appeals denied this claim:

A trial court's determination that a defendant validly waived his right to a jury trial is reviewed for clear error. *People v. Leonard,* 224 Mich.App 569, 595; 569 NW2d 663 (1997). "The adequacy of jury trial waiver is a mixed question of fact and law." *People v. Cook,* 285 Mich.App 420, 422; 776 NW2d 164 (2009). In order for a waiver of the constitutional right to a jury trial to be valid, it must be both knowingly and voluntarily made. *Id.* MCR 6.402(B) sets forth the procedure for securing a proper jury trial waiver:

Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury. The court must also ascertain, by addressing defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court. A verbatim record

9

must be made of the waiver proceeding.

"By complying with the requirements of MCR 6.402(B), a trial court ensures that a defendant's waiver is knowing and voluntary." *Cook,* 285 Mich.App at 422.

The record shows that defendant's jury waiver complied with MCR 6.402(B). Further, the colloquy between defendant and the trial court clearly indicates that defendant understood his right to jury trial and voluntarily waived that right. Defendant does not argue that he was not informed of his right to a jury trial, but rather complains that the trial court failed to explain various aspects of that right, such as that he could participate in jury selection, that a jury is composed of 12 members of the community, that a jury verdict must be unanimous, or how various evidentiary rules might apply at a jury trial. However, a court is not required to provide such advice. See *Leonard,* 224 Mich.App at 595-596; *People v. James (After Remand),* 192 Mich.App 568, 570-571; 481 NW2d 715 (1992). Further, the trial court ascertained that defendant understood what it meant to have a trial by jury by confirming that he had discussed it with defense counsel, and by asking defendant if he had any questions. The trial court did not err in finding that defendant knowingly and voluntarily waived his right to a jury trial.

*Garrett*, 2011 WL 15335 at *2-3.

Trial by jury in a criminal case is a fundamental right guaranteed under the Constitution. "Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which -- were they to be tried in a federal court -- would come within the Sixth Amendment's guarantee." *Duncan v. State of Lousiana,* 391 U.S. 145, 149 (1968). "Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant." *Patton v. United States*, 281 U.S. 276, 312 (1930), *abrogated on other grounds in Williams v. Florida*, 399 U.S. 78 (1970). "[S]ince trial by jury confers burdens as well as benefits,

an accused should be permitted to forego its privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury." *Adams v. United States ex rel. McCann,* 317 U.S. 269, 278 (1942). *See, e.g.,Tate v. Bauman*, No. 5:13-CV-11118, 2015 WL 4389637 at *6 (E.D. Mich. July 15, 2015) ("[a] criminal defendant may have sound tactical reasons for relinquishing a jury trial in favor of a bench trial").

"Because the right to a jury trial is fundamental  .  .  .  waiver of that right – to be valid – must have been knowingly, intelligently and voluntarily made." *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006). "[T]here is a knowing and intelligent waiver where the defendant understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *Sowell v. Bradshaw,* 372 F.3d 821, 836 (6th Cir. 2004) (internal quotation marks omitted). "[T]he burden of demonstrating that a waiver of jury trial was invalid lies with the defendant who waived it." *Id.* at 832. The existence of a written waiver "creates a presumption that the waiver is voluntary, knowing and intelligent." *Spytma,* 313 F.3d at 371. "[A]lthough recommended, there is no federal constitutional requirement that a court conduct an on-the-record colloquy with the defendant prior to accepting the jury waiver." *Spytma v. Howes,* 313 F.3d 363, 370 (6th Cir.2002).

Here, after requesting a bench trial at the final pretrial conference, petitioner was placed under oath and engaged in the following colloquy:

THE COURT:          Now, Mr. Garrett, did you sign this waiver of your right to a trial by jury?

THE DEFENDANT: Yes.

THE COURT:          And did you read this form before you signed it?

THE DEFENDANT:   Yes.

THE COURT:   Did you understand it?

THE DEFENDANT:   Yes.

THE COURT:   And you've talked to your attorney about this decision to waive your right to a jury?

THE DEFENDANT:   Yes.

THE COURT:   Has your attorney been able to answer all of your questions?

THE DEFENDANT:   Yes.

THE COURT:   And do you understand that if I find you guilty or not guilty, it would be the same as if the jury finds you guilty or not guilty?

THE DEFENDANT:   Yes.

THE COURT:   And has anyone threatened you in any way to get you to waive your right to a jury trial?

THE DEFENDANT:   Not at all.

THE COURT:   Has anyone promised you anything in exchange for waiving your right to a jury trial?

THE DEFENDANT:   Not at all.

THE COURT:   And so you're waiving your right to a jury trial freely and voluntarily?

THE DEFENDANT:   Yes.

THE COURT:   Thank you.
I'll accept that as a knowing and voluntary waiver.

Final Conference Trans. at pp. 13-14 (May 15, 2009) (docket no. 21).

Petitioner's written waiver of a trial by jury created a presumption that the waiver was "voluntary, knowing and intelligent." *Spytma,* 313 F.3d at 371. Petitioner's testimony supported that

presumption, and independently demonstrated that his waiver was knowing, intelligent and voluntary. In summary, petitioner's waiver of constitutional right to a trial by jury was valid.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### C. Insufficient evidence to support for first-degree home invasion (Issue III)

Next, petitioner contends that the evidence presented at trial was insufficient to support his conviction for home invasion because the state failed to establish all of the elements of the crime. The Michigan Court of Appeals rejected petitioner's claim:

> Defendant also argues that his conviction for first-degree home invasion must be vacated because there was insufficient evidence that the structure that he entered was a "dwelling." We disagree.

> When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Wolfe,* 440 Mich. 508, 515; 489 NW2d 748, amended 441 Mich. 1201 (1992). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v. Truong (After Remand),* 218 Mich. App 325, 337; 553 NW2d 692 (1996). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the [trier of fact's] verdict." *People v. Nowack,* 462 Mich. 392, 400; 614 NW2d 78 (2000).

> The elements of first-degree home invasion are: (1) the defendant broke and entered a dwelling or entered the dwelling without permission; (2) when the defendant did so, he intended to commit a felony, larceny, or assault, or he actually committed a felony, larceny, or assault while entering, being present in, or exiting the dwelling; and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon. MCL 750 .110a(2); *People v. Sands,*

13

261 Mich. App 158, 162; 680 NW2d 500 (2004).

For purposes of the crime of home invasion, a "dwelling" is a structure or shelter that is used permanently or temporarily as a place of abode. MCL 750.110a(1)(a); *People v. Powell,* 278 Mich.App 318, 320; 750 NW2d 607 (2008). A structure that is temporarily vacant, but to which the inhabitant intends to return, remains a dwelling. *Id.* at 322. Neither the duration of the absence nor the habitability of the structure precludes the establishment of the structure as a dwelling. *Id.* Thus, in *Powell,* this Court held that the fact that a house had been damaged by a fire, condemned, and declared not habitable at the time of the offense did not mean that it could not be a dwelling for purposes of second-degree home invasion, so long as the inhabitant intended to return. *Id.*

In this case, although no one was living in the structure at the time of the offense, the evidence showed that it was a residential house that the three complainants were improving to make it "move-in" ready. Cash testified that defendant asked him if the house was for rent, and he advised defendant that it had already been rented. Viewed in a light most favorable to the prosecution, the evidence showed that the structure, although temporarily vacant, was used as a place of abode and, accordingly, was a dwelling within the meaning of MCL 750.110a(2). Accordingly, the evidence was sufficient to sustain defendant's first-degree home invasion conviction.

*Garrett*, 2011 WL 15335 at *3-4.

Despite the prohibition against federal habeas corpus review of state law issues, the Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White*, 531 U.S. 225, 229 (2001). This question is recognized under 28 U.S.C. § 2254 and analyzed using the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that the Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Sufficient evidence supports a conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

14

have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis added).  In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the fact finder's verdict. *United States v. Rayburn*, 495 F.3d 328, 337-38 (6th Cir. 2007).  The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).  *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

Finally, because both the *Jackson* standard and AEDPA apply to petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir.2008).

Although petitioner characterizes this issue as a sufficiency of the evidence claim, he actually seeks to have this court overrule the state appellate court's construction of Michigan's home invasion statute and find that his criminal conduct did not involve a "dwelling" under that statute. Petitioner seeks relief not available in a federal habeas action.  A sufficiency of the evidence claim "does not invite federal habeas courts to engage in a substantive analysis of state statutory terms" or "transform[] federal habeas courts into super-appellate state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2nd Cir. 2002).  For this reason, in determining whether sufficient evidence exists to support a conviction on habeas review, the standard set forth in *Jackson* "must be applied with

explicit reference to the substantive elements of the criminal offense *as defined by state law*." *Jackson*, 443 U.S. at 324 fn. 16 (emphasis added).  Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Petitioner cannot seek federal habeas relief based upon his disagreement with the state appellate court's construction of a state statute.  *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("[a] federal court may not issue a writ on the basis of a perceived error of state law").  The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings.  *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  *See Cox v. Maxwell*, 366 F.2d 765, 767 (6th Cir. 1966) ("[i]t is within the province of a state to define crimes and to fix the punishment therefor").

Here, the Michigan Court of Appeals defined the elements of first-degree home invasion and explicitly rejected petitioner's contention that the structure at issue was not a "dwelling" under M.C.L. § 750.110a(2).  This Court is prohibited from acting as a "super-appellate state court" and overruling the state court's construction of the criminal statutes at issue in this action.  Accordingly, petitioner's claim should be denied because it raises an issue of state law that is not cognizable on federal habeas review.

### D.     Ineffective assistance of trial counsel (Issue IV)

Next, petitioner contends that he was denied effective assistance of trial counsel because:  (1) counsel conceded petitioner's guilt and did not promote his defense; (2) counsel failed to exclude and limit the prosecution's testimony; (3) counsel failed to adequately challenge the complainants' identification testimony; (4) counsel failed to interview and call alibi witnesses; (5) counsel failed to object to suggestive testimony by a law enforcement official; (6) counsel failed to

consult and call an expert on witness identification issues; and (7) counsel advocated for a trial process which allowed the trier of fact access to statements of a non-appearing prosecution witness.

### 1. Legal standard

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient; and, (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

17

2.   **Counsel's concession of guilt and failure to promote petitioner's defense**

First, the Michigan Court of Appeals rejected petitioner's claim that trial counsel improperly conceded his guilt through her line of witness questioning:

> Whether defendant was denied the effective assistance of counsel is a mixed question of fact and constitutional law. We review the trial court's factual findings for clear error, and its constitutional determinations de novo. *People v. LeBlanc,* 465 Mich. 575, 579; 640 NW2d 246 (2002). Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. *People v. Pickens,* 446 Mich. 298, 302-303; 521 NW2d 797 (1994); *People v. Effinger,* 212 Mich. App 67, 69; 536 NW2d 809 (1995). To establish ineffective assistance of counsel, defendant must show that counsel's performance was below an objective standard of reasonableness and that it is "reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v. Frazier,* 478 Mich. 231, 243; 733 NW2d 713 (2007). Defendant must also overcome the presumption that the challenged action or inaction was sound trial strategy. *People v. Johnson,* 451 Mich. 115, 124; 545 NW2d 637 (1996).
>
> Defendant first argues that trial counsel improperly conceded his guilt by admitting that defendant was present at the scene, which was inconsistent with his alibi defense. Defendant relies on the following questions by defense counsel during her cross-examination of Cash:
>
> Q.   Okay. And in fact there was a period of time when Mr. Garrett was out of your presence with the young worker in the backyard, correct?
>
> *A.*   Yes.
>
> *                       *                       *
>
> *Q.*   Okay. You had very limited conversation with Mr. Garrett that morning, correct?
>
> *A.*   Correct.
>
> Although a complete concession of a defendant's guilt renders counsel ineffective, *People v. Krysztopaniec,* 170 Mich. App 588, 596; 429 NW2d 828 (1988), the record here does not support defendant's claim that trial counsel conceded defendant's guilt to the charged offenses. Viewed in context, the challenged

18

questioning was not intended as an admission that defendant was present at the house, but rather to raise questions concerning Cash's identification of defendant as the person at the house. Counsel referred to defendant by name in the questions because Cash had already identified the person as defendant. Counsel's decisions about what questions to ask and how to argue are matters of trial strategy, which this Court will not evaluate with the benefit of hindsight. *People v. Rockey,* 237 Mich. App 74, 76; 601 NW2d 887 (1999). "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel."*People v. Stewart (On Remand),* 219 Mich. App 38, 42; 555 NW2d 715 (1996). Furthermore, in denying defendant's motion for a new trial, the trial court stated that it did not view counsel's questions as an admission that defendant was present at the house, and that it was aware that the defense theory at trial was that defendant was not present when the crimes were committed. Thus, defendant was not prejudiced by the manner in which counsel questioned Cash.

*Garrett*, 2011 WL 15335 at *4.

The state appellate court identified and reasonably applied the correct legal standard in denying petitioner's claim. In the context of a bench trial, this line of questioning, which apparently referred to Cash's previous testimony at the preliminary examination, was not viewed by the trial court as an admission or concession of guilt:

The defendant claims that his trial attorney conceded defendant's guilt by referring to him as being at the scene despite his claims of innocence. This case was tried to the court without a jury and the court clearly understood that the defendant had entered a plea of not guilty and was cloaked in the mantle of innocence unless and until the prosecutor provided that he had committed the charged offenses beyond a reasonable doubt. The defense attorney's reference to her client was in the context of trying to impeach the complaining witnesses with their preliminary exam testimony and witness statements to show that they did not consistently describe the robbers. The trial attorney's references to her client in this context did not concede his guilt or result in prejudice to the defendant.

Order (April 6, 2010) at p. 13.

Furthermore, the line of questioning pursued by counsel was a matter of strategy and fell within the range of reasonable conduct. "Under *Strickland*, we must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy."

19

*Cathron v. Jones*, 77 Fed. Appx. 835, 841 (6th Cir. 2003). The fact that a trial counsel's defense strategy was unsuccessful does not mean that she was ineffective. *See Campbell v. Coyle*, 260 F.3d 531, 551 ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken."). Accordingly, petitioner's claim of ineffective assistance fails.

> ### 3. Counsel's failure to exclude and limit prosecution testimony

Next, the Michigan Court of Appeals rejected petitioner's contention that his trial counsel was ineffective for not taking action to exclude identification testimony of two witnesses made during a pre-trial hearing:

> Defendant next argues that trial counsel was ineffective for failing to move to suppress Meho Basic's identification testimony. We disagree. There is no evidence of a pretrial identification procedure that was improper or unduly suggestive. See *Kurylczyk,* 443 Mich. at 302. Moreover, as with Cash, the record shows that there was an independent basis for Basic's in-court identification. See *Davis,* 241 Mich. App at 702-703. Like Cash, Basic had an opportunity to observe defendant on two separate occasions. On the first occasion, Basic greeted defendant and was able to see his face. Subsequently, during the robbery, Basic observed defendant when defendant confronted him and demanded money while pointing a gun at his head. Basic testified that defendant did not have his face covered, that the lighting in the room was good, and that he had no problem seeing defendant's face. Basic had a conversation with defendant about his wallet during the robbery. Basic also saw that defendant had a tattoo on his neck, explaining that he saw it when defendant was standing "exactly in front of [him]." Further, Basic was certain of his identification of defendant and never identified anyone other than defendant. Given this record, defendant has not demonstrated a reasonable probability that any motion to suppress would have been successful. Counsel was not required to make a futile motion. See *People v. Snider,* 239 Mich. App 393, 425; 608 NW2d 502 (2000).

*Garrett*, 2011 WL 15335 at *4.

The state appellate court considered the factors in *Biggers* in concluding that there was no unduly suggestive pre-trial identification, that Mr. Basic's testimony regarding his interaction

20

with plaintiff presented an independent means of identification based on his two interactions with petitioner, and that trial counsel was not required to file a futile a motion to suppress the identification.  Counsel cannot be ineffective for failing to raise meritless or futile objections.  *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial").   Accordingly, petitioner's claim of ineffective assistance fails.

### 4.     Counsel's failure to adequately challenge identification testimony

Next, the Michigan Court of Appeals rejected petitioner's contention that trial counsel was ineffective for failing to adequately challenge and impeach the two witnesses who identified him:

> Defendant's third ineffective assistance of counsel claim is that trial counsel was ineffective for failing to adequately challenge the complainants' identification testimony at trial.  We find no merit to this argument.  The record discloses that, throughout the trial, defense counsel consistently and vigorously argued the primary defense theory of misidentification.  Counsel elicited several weaknesses in the complainants' identifications of defendant, including differences between their descriptions of the robber on the night of the incident and defendant's actual appearance at trial.   Counsel also highlighted problems with defendant's identification as one of the robbers, and elicited testimony intended to undermine the reliability of the identification testimony, such as the fact that the incident was brief and occurred under stressful conditions.  Counsel questioned the complainants about their respective locations and vantage points when defendant was supposedly at the house, and presented a police statement that purportedly showed that Basic had not mentioned a tattoo.  In closing argument, trial counsel summarized the testimony, and again argued that defendant's identification as one of the robbers was not established beyond a reasonable doubt.  Although defendant contends that counsel could have further questioned Cash and Basic about their police statements, and could have called the police officers who took their statements, decisions concerning how to question witnesses and what evidence to present are matters of trial strategy, which this Court will not second guess.  *Rockey*, 237 Mich. App at 76.  The record here does not establish that trial counsel's performance fell below an objective standard

21

of reasonableness. *Frazier,* 478 Mich. 231, 243.

*Garrett*, 2011 WL 15335 at *5-6.

       The state appellate court properly concluded that trial counsel adequately challenged Cash and Basic's identification.   Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the Court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Strickland*, 466 U.S. at 689-90.  The Court is also deferential to the state appellate court's application of *Strickland*.  *See Harrington*, 562 U.S. at 105.  Although trial counsel was unable to successfully impeach either witness or persuade the trial judge of her client's innocence, the fact that her strategy was not successful in discrediting the eyewitness testimony does not mean that she was ineffective.  *See Campbell*, 260 F.3d at 551.  Accordingly, petitioner's claim of ineffective assistance fails.

### 5.    Counsel's failure to interview and call alibi witnesses

       Next, petitioner contends that trial counsel was ineffective because even though petitioner gave counsel the names of two alibi witnesses, "Shawn" and "Wayne," counsel failed to investigate, interview, and ultimately call on these witnesses to testify on her client's behalf.  In denying petitioner's motion for a new trial, the trial judge pointed out that petitioner himself testified at trial that he did not know anyone named "Shawn" or "Wayne":

       The defendant claims that his trial counsel was ineffective when she failed to call his alibi witnesses Wayne and Shawn to testify that he was with them and not at the robbery.  The defendants's trial attorney testified at the evidentiary hearing that the defendants said that on the day of the robbery he was with one person, 'Shawn,' but did not know Shawn's last name or address.  The trial attorney testified that she met with the defendant's mother who told her she did not know a person named 'Shawn.'  At the evidentiary hearing the defendant, his mother Sabrina Lackey and his cousin Shawn Lackey all testified that the defendant was with Shawn on the day

22

of the robbery from about 1:00 pm until he was arrested at about 4:00 pm. Sabrina Lackey testified that she told the trial attorney that the defendant had breakfast at home and then left but she never mentioned Shawn because the attorney did not ask her about him. Sabrina Lackey testified that she did not attend her son's preliminary examination or trial. Shawn Lackey testified that he was with the defendant at the gas station for several hours until the defendant was arrested. He testified that he heard he was supposed to testify but he never went to any court proceedings. The defendant testified at the evidentiary hearing that he told his trial attorney about Shawn, Wayne, his mother and other relatives who could be alibi witnesses. He testified that during his trial he never mentioned to his attorney about the witnesses not being in court.

The defendant's appellate counsel contended at the hearing that the trial attorney lied under oath when she said the defendant and his mother said they did not know Shawn's last name or how to contact him. However, if the appellate attorney had reviewed the trial transcript before he cast aspersions on a respected trial attorney he would see plainly that the defendant was not truthful. The defendant testified at his trial that he did not know Shawn or Wayne's last name. The defendant testified at his trial that his friend Kevin came to his house and went to the gas station with him to hang out. At the evidentiary hearing defendant did not mention Kevin being present. The defendant's mother and Shawn made no effort to contact the trial attorney about being a witness for the defendant and never even came to his preliminary examination or trial. The trial attorney was not ineffective when she did not call alleged alibi witnesses that the defendant could not even identify by name despite his latest testimony that Shawn was his cousin.

Order (April 6, 2010) at pp. 14-15.[1]

The Michigan Court of Appeals rejected petitioner's contention that trial counsel was

ineffective:

Next, defendant argues that trial counsel was ineffective for failing to call "Wayne" and "Shawn" as alibi witnesses. "A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses." *People v. Kelly,* 186 Mich. App 524, 526; 465 NW2d 569 (1990). "Ineffective assistance of counsel can take the form of a failure to call a witness or present other evidence only if the failure deprives the defendant of a substantial defense." *People v. Hyland,* 212 Mich. App 701, 710; 538 NW2d 465 (1995), mod 453 Mich. 902 (1996). A defense is

---

[1] Neither party has submitted a copy of the complete trial transcript. The Rule 5 materials contain only a 10-page transcript entitled "Waiver Trial", in which the trial judge set forth her findings of fact and conclusions of law. *See* Waiver Trial Trans. (docket no. 23).

23

substantial if it might have made a difference in the outcome of the trial. *Id.*

At the evidentiary hearing, trial counsel testified that defendant told her that he was with Shawn at the time of the robbery, but did not know Shawn's last name or give her a phone number, address, or any other method to contact Shawn. According to counsel, defendant stated that he had no information on Shawn because he was a person who he "had just hung out with from time to time." Counsel also testified that defendant's mother told her that she did not know Shawn, did not know his last name, and did not know how to contact him. Trial counsel further testified that she was never contacted by any other potential witnesses on behalf of defendant.

In contrast, defendant's mother testified that Shawn is her nephew and she knew how to contact him. She did not provide any information to trial counsel because she was not asked. Shawn testified that he had known defendant all of his life, and that he and defendant were close friends as well as cousins. Shawn stated that he shares the same last name as defendant's mother, and that defendant knew his last name. He stated that, if trial counsel had questioned him, he would have told counsel that defendant was with him at the time of the robbery, and that there were a lot of other people there. Shawn explained that he did not attend any court proceedings because he was waiting for someone to contact him. Defendant testified that he told trial counsel about "Shawn Lackey, Rico, Wayne, [his mother], Erica Lackey, [and] Shanice Lackey," and how to contact each potential witness. Defendant admitted that he did not say anything to trial counsel at trial when none of these witnesses were called to testify.

As the trial court below observed, resolution of this claim depended on how the court resolved the conflicting accounts of trial counsel, who testified that defendant was unable to provide any contact information for any potential alibi witnesses, and defendant and defendant's witnesses, who testified that trial counsel was provided with the names and contact information for potential alibi witnesses. The trial court determined that defendant's witnesses were not credible. This Court gives deference to a trial court's superior ability to judge the credibility of witnesses who appeared before it. *People v. Farrow,* 461 Mich. 202, 209; 600 NW2d 634 (1999). Moreover, as the trial court observed, defendant's testimony at the evidentiary hearing was inconsistent with his testimony at trial. At trial, defendant clearly testified that he did not know Shawn's last name. Defendant also testified at trial that he rode with a friend named Kevin to the gas station where he met up with Shawn and Wayne. Defendant did not mention being with Kevin at the evidentiary hearing. In light of this record, and affording deference to the trial court's superior ability to evaluate credibility, we find no clear error in the trial court's finding that defendant failed to provide defense counsel with Wayne's or Shawn's last name or how to contact either of them. Thus, defendant has failed to establish that trial counsel was constitutionally ineffective for failing to call either Shawn or Wayne at trial.

*Garrett*, 2011 WL 15335 at *6.

"[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). As discussed, the trial court held an evidentiary hearing on this matter, and based on the credibility findings at the hearing and the trial testimony, determined that trial counsel's testimony was the most credible. The trial court's factual findings, including credibility determinations, are presumed to be correct. *See Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007) ("in the context of a *Strickland* evidentiary hearing, it is for the judge to evaluate the credibility of the criminal defendant and the former defense counsel in deciding what advice counsel had in fact given to the defendant during his trial, and such findings are entitled to the Section 2254(e)(1) presumption").

To cut to the chase, while petitioner testified at the post-trial hearing that he provided trial counsel with information about Shawn, Wayne, his mother, and other relatives who could have served as alibi witnesses, the trial judge found that this testimony was refuted by petitioner's own trial testimony. Based on the conflicting witness testimony, the trial judge believed the facts as stated by trial counsel and found petitioner's testimony as untruthful. Trial counsel was not deficient, having neither the identities of petitioner's alibi witnesses nor the means of contacting them. Accordingly, petitioner's claim of ineffective assistance fails.

**6.      Counsel's failure to object to suggestive testimony by a law enforcement official**

Next, the Michigan Court of Appeals rejected petitioner's contention that trial counsel was deficient for failing to object to suggestive testimony of a police officer:

Defendant next argues that trial counsel was ineffective for failing to object to an officer's testimony that he had frequent contacts with defendant and knew of the tattoo on his neck. Contrary to what defendant argues, this evidence was not offered to prove defendant's identity as one of the robbers. Rather, it was offered only to explain why the officer went to a particular place to locate defendant after hearing that one of the suspects had "Jay" tattooed on his neck. See *People v. Chambers,* 277 Mich. App 1, 11; 742 NW2d 610 (2007). Further, the officer did not testify how he knew defendant, or disclose the nature of his contacts with him. Under these circumstances, defense counsel's failure to object was not objectively unreasonable, particularly considering that defendant was being tried before the court and not a jury, thereby alleviating any concern that the evidence might be considered for an improper purpose. "A judge, unlike a juror, possesses an understanding of the law which allows him to . . . decide a case based solely on the evidence properly admitted at trial." *People v. Jones,* 168 Mich. App 191, 194; 423 NW2d 614 (1988).

*Garrett*, 2011 WL 15335 at *7.

As explained by the state appellate court, the testimony was relevant and admissible because it was used for the sole purpose of explaining why the officer went to a specific location to arrest petitioner after learning that one of the suspected robbers had "Jay" tattooed on his neck. Because no statements were made regarding the nature of the officer's "frequent contacts" with petitioner, it would be improper for the trier of fact to draw any conclusions or inferences based on those contacts. As noted in the state appellate opinion, under Michigan law, when judges act as factfinders, they are presumed to understand the rules of evidence and execute their duty based only on facts presented to the court. *Jones,* 168 Mich. App at 194. The same is true in federal cases. *See Williams v. Illinois,* -- U.S. --, 132 S. Ct. 2221, 2235 (2012) ("When the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose."). Based on this record, there was no reason for petitioner's trial counsel to object to this testimony. Counsel

cannot be ineffective for failing to raise meritless or futile objections.  *See Coley*, 706 F.3d at 752.

Accordingly, petitioner's claim of ineffective assistance fails.

### 7. Counsel's failure to consult and call expert witness on identification issues

Next, the Michigan Court of Appeals rejected petitioner's contention that his counsel

was ineffective for failing to consult and call an expert on witness identification:

> Defendant next argues that trial counsel was ineffective for failing to request the appointment of an expert witness on the reliability of eyewitness identification.  Considering the circumstances surrounding defendant's identification, and the fact that defendant was being tried before the court, we agree with the trial court that this case was not one where expert testimony would have been particularly useful, let alone necessary to enable defendant to "safely proceed to trial" such that appointment of an expert would have been warranted.  MCL 775.15; *People v. Carnicom,* 272 Mich App. 614, 616-617; 727 NW2d 399 (2006).  Rather, under the circumstances, it was reasonable for defense counsel to challenge defendant's identification through argument, cross-examination, and other evidence at trial.  Thus, defendant has failed to show either that trial counsel was ineffective for failing to request the appointment of an identification expert, or that he was prejudiced by the absence of such an expert at trial.

*Garrett*, 2011 WL 15335 at *7.

The state courts properly found this case was not one that was so complex as to

require an expert witness.  "No precedent establishes that defense counsel must call an expert

witness about the problems with eyewitness testimony in identification cases or risk falling below

the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 Fed. Appx. 822, 833

(6th Cir. 2011).   As discussed, *supra*, trial counsel adequately cross-examined the eyewitnesses

about their identification of petitioner as the perpetrator of the crimes.  Accordingly, petitioner's

claim of ineffective assistance fails.

8. **Counsel's act of advocating for a trial process that allowed court statements of a non-appearing prosecution witness to be made available to the trier of fact**

In his final claim of ineffective assistance of counsel, petitioner contends that his trial counsel was ineffective because she "advocated" for allowing a witness' previous court statement identifying him as the perpetrator of the crime to be used at the trial.

The trial judge's order denying petitioner's motion for a new trial rejected this claim:

> The defendant argues that his trial attorney was ineffective when she allowed a non-testifying witness's identification statements that were used during the Wade hearing to be available to the same judge who would then be the trier of fact at his trial. The defendant argues that the defendant's right to confrontation were violated by this process. The trial court found that Mr. Cash and Mr. Basic were credible witnesses who had based their identification of the defendant on their personal interaction with the defendant before and during the robbery. Mr. Cash had spoken to the defendant both in the morning and then again in the afternoon. Mr. Basic was robbed by the defendant and talked to him about leaving his wallet behind. Mr. Basic interacted with the defendant a second time when he returned to make Mr. Basic take his shoes off to look for money. The trial court found that the witnesses each had described the location of the tattoo on the defendant's neck although they did not know what the tattoo depicted. The trial court did not consider any statements by Mr. Hess when it found defendant guilty of robbing Mr. Cash and Mr. Basic. The identification testimony by Mr. Cash and Mr. Basic was credible and sufficient to find the defendant was the person who robbed them in the house on Cheyenne.

Order (April 6, 2010) at p. 16.

The Michigan Court of Appeals also rejected the claim:

> Defendant lastly argues that trial counsel was ineffective for allowing Hess' identification statement that was used during the *Wade* hearing to be available to the same judge who tried the case. Hess identified defendant before trial as one of the robbers, but did not testify at trial. In denying this claim below, the trial court explained that its determination that defendant was one of the robbers was based solely on the identification testimony of Cash and Basic, and that it did not consider any statements by Hess. Because the record discloses that Hess' statement did not affect the trial court's verdict, this ineffective assistance of counsel claim cannot succeed.

28

*Garrett*, 2011 WL 15335 at *7.

As discussed, *supra*, there was an independent basis of identification presented at trial by eyewitnesses Cash and Basic. The trial judge recounted some of the interactions between Cash and Basic, and stated that she did not rely on Hess' statement in convicting petitioner. See Order (April 6, 2010) at p. 16. This is consistent in the trial judge's finding that, "This Court believes the identification of Mr. Garrett by Mr. Cash and Mr. Basic." Waiver Trial Trans. (May 27, 2009) at p. 8. In this regard, the trial judge's findings of fact after trial do not cite any testimony given by Mr. Hess. *Id.* at pp. 3-10. In summary, petitioner was not prejudiced by the introduction of Hess' statement. Accordingly, petitioner's claim of ineffective assistance fails.

### 9.     Summary

The Michigan Court of Appeals' decision rejecting petitioner's seven claims of ineffective assistance of counsel was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on these claims.

### E.     Improper scoring of offense variable (OV) 4
   ### (Issue V)

Finally, petitioner contends that the trial court incorrectly scored OV 4 in calculating his sentence under Michigan's sentencing guidelines. This issue was presented to the state appellate court as an issue of state law and involving an alleged abuse of judicial discretion. The Michigan Court of Appeals rejected the claim as follows:

29

In his final issue, defendant argues that he is entitled to resentencing because the trial court erroneously scored ten points for offense variable (OV) 4 of the sentencing guidelines. We disagree.

"A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v. Endres,* 269 Mich. App 414, 417; 711 NW2d 398 (2006). A scoring decision "for which there is any evidence in support will be upheld." *Id.* (citation omitted). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v. Yost,* 278 Makeup 341, 379; 749 N.W.2d 753 (2008).

Ten points may be scored for OV 4 where "[s]erious psychological injury requiring professional treatment occurred to a victim."MCL 777.34(1)(a). "There is no requirement that the victim actually receive psychological treatment." *People v. Apgar,* 264 Mich. App 321, 329; 690 NW2d 312 (2004). In this case, Basic testified that defendant pointed a gun at his head as he robbed him. According to the victim's impact statement prepared for sentencing, Basic's wife reported that Basic experiences trouble sleeping and suffers from emotional shock, fear, and anger as a result of defendant's assault. She believed that Basic required professional assistance to manage his emotional state. This evidence adequately supports the trial court's finding that Basic sustained a serious psychological injury that may require professional treatment. Thus, the trial court did not abuse its discretion in scoring ten points for OV 4.

*Garrett*, 2011 WL 15335 at *7-8.

Petitioner's claim involves the state court's interpretation of state law and is not cognizable on federal habeas review. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle*, 502 U.S. at 68. Federal habeas corpus relief does not lie for errors of state law, including the state's computation of a habeas petitioner's prison term. *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68. *See Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion

30

in determining 'the type and extent of punishment for convicted defendants.'" *Id.* at 301, *quoting Williams v. New York*, 337 U.S. 241, 245 (1949). Here, petitioner does not claim that his sentences exceeded the statutory limits.

In reaching this determination, the Court is aware that petitioner's supporting memorandum and his state appellate brief included the following statement, "The constitutional guarantee of due process, U.S. Const., Amend. XIV, requires that sentencing be based upon accurate information." Petitioner's Memorandum (docket no. 1-2, PageID.84); Appellant's Brief at p. 46 (docket no. 28). Criminal defendants have a due process right to a sentence based on accurate information. *United States v. Tucker*, 404 U.S. 443, 447 (1972). However, this fleeting reference to the Due Process Clause is insufficient to present a federal due process claim. The sentencing issue presented by petitioner in both his state court appeal (*see* Appellant's Brief at pp. 46-49) as well as this habeas action (*see* PageID.18), was a state law claim regarding the trial court's alleged improper scoring of OV 4 in determining the guidelines for petitioner's minimum sentence. Merely citing the Due Process Clause does not transform the state trial judge's alleged abuse of discretion in calculating the sentencing guidelines into a constitutional claim. *See Austin*, 213 F.3d at 301(in rejecting petitioner's claim that the trial court's departure from the sentencing guidelines violated his federal due process rights during sentencing, the court noted that petitioner failed "to articulate the grounds upon which the trial court's departure from the Michigan Sentencing guidelines violates any federal due process right he possesses," and was "unable to substantiate a single violation of any of his constitutional guarantees to due process"). Accordingly, petitioner's claim should be denied because it raises an issue of state law that is not cognizable on federal habeas review.

## IV.    Recommendation

For these reasons, I respectfully recommend that petitioner's habeas petition be

**DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

I further recommend that a certificate of appealability be denied. *See Slack v.*

*McDaniel*, 529 U.S. 473 (2000).


Dated:  October 7, 2016                      /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk
of the Court within fourteen (14) days after service of the report.  All objections and responses to
objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections
within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474
U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).